UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MARGARET FORD

                Appellant                **MEMORANDUM OF DECISION AND ORDER**

       -against-                     08CV2740(ADS)

BOARD OF MANAGERS OF CAMEO
TOWNHOUSES AT MASSAPEQUA

                Appellee.
----------------------------------------------------------X

**APPEARANCES**

**HUGHES HUBBARD & REED**
Attorneys for the Appellant Margaret Ford
1 Battery Park Plaza
New York , NY 10004
        By:     Christopher K. Kiplok, Esq.
                  Daniel Christian Doeschner, Esq.
                  Daniel Steven Lubell, Esq., Of Counsel

**JAY L. YACKOW, ATTORNEY AT LAW**
Attorney for Appellee Board of Managers of Cameo
Townhouses at Massapequa
1400 Old Country Road
Westbury , NY 11590
        By:     Jay L. Yackow, Esq.
                  Joseph D. Rocco, Esq., Of Counsel

**STEINBERG, FINEO, BERGER & FISCHOFF, P.C.**
Attorneys for Appellee Board of Managers of Cameo
Townhouses at Massapequa
40 Crossways Park Drive
Woodbury, NY 11797
        By:     Gary C. Fischoff, Esq.
                  Laurie S. Horz, Esq., Of Counsel

**SPATT, District Judge:**

This is an appeal by Margaret Ford ("Ford" or the "Debtor") from a decision of the United States Bankruptcy Court for the Eastern District of New York (Craig, J.) granting a motion by the Board of Managers of Cameo Townhouses ("Cameo") to lift the automatic bankruptcy stay attaching to the action as dictated by 11 U.S.C. § 362(a)(3), (4), and (k)(1). Cameo seeks to name Ford in a foreclosure action with respect to certain condominium premises located at 75 Townhouse Drive, Massapequa Park, N.Y. 11752 (the "Premises").

## I. BACKGROUND

On June 12, 2006, Ford filed a *pro se* voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code because of an alleged attempt by a mortgage company, ZBT Holdings, Inc. ("ZBT"), to evict her and her husband from the Premises. By way of background, appellant states that in December 1999, she and her husband purchased the Premises for approximately $170,000 and have been continuously living there since that time. The appellant contends that acting under the guise of refinancing her mortgage, agents of First United Mortgage Banking Corp., a mortgage banking institution and an affiliate of ZBT, replaced Ford and her husband as the record owners of the Premises with its own designee and simultaneously secured both a first and second mortgage against the Premises. The appellant alleges that First United and ZBT then used their fraudulently acquired liens and title

2

ownership to try to dispossess the Fords from the Premises. Ford's claims of fraud and forgery are presently the subject of an adversary proceeding to clear title to the Premises.

On October 3, 2006, the law firm of Hughes Hubbard & Reed LLP agreed to represent Ford in her bankruptcy proceeding on a *pro bono* basis. On December 13, 2006, the case was converted from a Chapter 13 proceeding to Chapter 11. On or about July 31, 2006, ZBT moved for relief from the automatic stay in order to execute a warrant of eviction that it allegedly obtained from New York City Landlord and Tenant Court. The Court finds no order from the Bankruptcy Court granting or denying ZBT's motion in the record of this case.

Instead, on July 12, 2007, the Bankruptcy Court entered a Stipulation and Order of Settlement between the Fords and ZBT regarding the disputed ownership of the Premises. The Settlement provided in essence that ZBT would pass legal title to the Fords for the amount of $205,000. However, the settlement was never consummated because the Fords were unable to obtain a loan for the settlement amount, which they attribute to the sub-prime mortgage crisis. The appellant contends that Cameo was aware of the settlement and her interest in the Premises throughout the underlying case.

On January 7, 2008, Cameo filed a Notice of Lien for Unpaid Common Charges against the Premises in the Nassau County Clerk's Office. Further, on

February 13, 2008, Cameo filed a motion in the Bankruptcy Court, seeking an order lifting the automatic stay to permit Cameo to name the Fords in a foreclosure action based on its lien. According to Ford, Cameo sought to foreclose on its lien and recover condominium common charges in the amount of $3,540, late charges in the amount $1,020, and attorney fees and costs in the amount of $800.

On March 17, 2008, Judge Craig held a hearing on Cameo's motion and on the appellant's cross-motion for damages incurred by violation of the automatic bankruptcy stay. The court found that Cameo was not adequately protected in its interest; that it had a right to commence an action against ZBT to recover the common charges; and that if it needed to name Ford in order to foreclose, it should be so permitted. (Tr. of Hearing, March 17, 2008, at 16). Accordingly, on May 20, 2008, Chief United States Bankruptcy Judge Carla E. Craig entered an Order granting relief from the automatic stay, which provided:

- that application of Cameo Townhouses is granted modifying the automatic stay to allow Cameo Townhouses, its successors and/or assigns, to commence and/or continue with a foreclosure action against ZBT Holdings Inc., with respect to the Premises; and

- that application of Cameo Townhouses is granted modifying the automatic stay to allow Cameo Townhouses, its successors and/or assigns to name Debtor, Margaret Ford, as a Defendant in any foreclosure action with respect to the Premises.

Order, Case No. 806-71327, May 20, 2008.

The appellant contends that after the Order issued, she attempted to pay Cameo the outstanding common charges, but the funds were returned. The plaintiff asserts that this evidences Cameo's intention to seek funds beyond those owing as a result of the unpaid common charges.

In this appeal, Ford contends that the Bankruptcy Court should have determined that her interest in the Premises was protected by the automatic stay and that Cameo's creation of its lien was a violation of the automatic stay, rendering the lien void *ab initio* and subjecting Cameo to mandatory and punitive damages for the violation. Further, the appellant contends that Cameo was without standing to seek stay relief as ZBT was the sole party responsible for payment of the common charges. Finally, the appellant contends that the Bankruptcy Court should have, at the very least, circumscribed the relief from stay to the amounts sought to be collected. Ford alleges, that the open-ended relief granted by the Bankruptcy Court leaves her vulnerable to significant costs and expenses.

## II. DISCUSSION

**A.     Standard of Review**

A district court hearing an appeal from a bankruptcy court reviews that court's findings of fact under the "clearly erroneous" standard, *see* Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the de novo standard. *In re Vouzianas*, 259 F.3d 103, 107 (2d Cir. 2001); *In re Arochem Corp.*, 176 F.3d 610, 620

(2d Cir. 1999) (holding that "we review the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo") (citation omitted); *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998) (same) (citations omitted); *see also In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995) (same) (citations omitted).

"On appeal, a district court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *In re McNally*, No. 02-CV-85, 2003 U.S. Dist. LEXIS 25856, at *3 (S.D.N.Y. June 2, 2003) (citing Fed. R. Bankr. P. 8013).

**B.  As to Whether the Automatic Stay Attached to Ford's Interest in the Premises**

A petition filed under the Bankruptcy Code triggers an automatic stay, applicable to all entities, with regard to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" "any act to create, perfect, or enforce any lien against property of the estate;" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. §§ 362(a)(3), (4), and (6).

Here, the lien filed by Cameo was against the Premises, rather than against either Ford or ZBT.  Therefore, for the stay to prevent operation of Cameo's lien as to her interest, the appellant must first establish that she had an interest in the Premises.  *See In re Pegasus Agency, Inc.*, 101 F.3d 882, 886 (2d Cir. 1996).  Here, the appellant

included the Premises on her amended bankruptcy schedules, noting that ownership was in dispute, and listed ZBT as a creditor. The appellant further asserts interest in the Premises on three grounds: (1) her possessory interest; (2) that ZBT's title was acquired by fraud and forgery, thereby creating a constructive trust in the Premises in favor of the appellant; and (3) the residual value in the premises.

Section 541 of the Code "enumerates the types of property interests which are included in the bankrupt estate. . . .[including] 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987) (quoting 11 U.S.C. § 541(a)(1)). It is undisputed that a debtor will have residual equity in property where the value of the property is greater than any mortgage or loan amount owed on that property. *See In re Pegasus*, 101 F.3d at 886. Here, the appellant presents a 2007 tax appraisal that valued the premises at $350,000. (Exh. 3 to Opposition to Motion for Stay Relief, March 13, 2008). Because ZBT was willing to settle title to the Premises for $205,000, the appellant's claim that she should be the title owner and that the records were improperly changed are potentially meritorious. Thus, the appellant may indeed have an equitable interest in the Premises.

However, regardless of any equitable interest, Ford's possession of the Premises gives rise to an interest sufficient to invoke the stay provisions at the time she filed for bankruptcy. *See In re 48th Street Steakhouse*, 835 F.2d at 430 ("[A] mere

possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *see also In re Dominguez*, 312 B.R. 499, 505–06 (Bankr. S.D.N.Y. 2004) (requiring creditor to seek stay relief even though the debtor's redemption right in property at issue had expired, where debtor retained possession of the property at all relevant times).

Despite Cameo's contentions to the contrary, no warrant of eviction is included in the record. Even if an eviction warrant has issued against the Fords, it would not terminate the interest arising from their possession of the Premises. *Griggs v. 25 Realty Associates, L.L.C.*, No. 02CV0619, 2002 WL 523391, at *1 (S.D.N.Y. April 5, 2002) ("While, as a matter of New York law, the eviction warrant terminates the landlord-tenant relationship and necessarily voids the legal interests of the tenant, the remaining possessory interest is an equitable interest of the debtor in property afforded protection by the automatic stay." (internal quotations and citations omitted)).

C.     **As to Whether the Lien is Valid and Enforceable**

Cameo's lien is void as against Ford's interest in the Premises because she retained an interest in the property to which the automatic stay attached upon her bankruptcy filing. *See In re Gucci*, 197 Fed. Appx. 58 (2d Cir. 2006) (affirming determination of lien against debtor's interest in Italian property as void *ab initio* where lien was registered with Rome Register of Real Properties after the debtor filed

for bankruptcy). Further, once on notice of the appellant's interest in the property and the pending bankruptcy, Cameo was charged with seeking relief from the stay before going forward. *Dominguez*, 312 B.R. at 507 ("[R]egardless of whether the Debtor's right to redeem the property had expired, the Debtor's possessory interest in the property was protected by the automatic stay and the City was required to request relief from the automatic stay prior to seeking and obtaining a judgment of foreclosure in state court based upon the delinquent tax debt."). Therefore, the Court finds that Cameo filed its lien in violation of the automatic stay and the lien is void as against Ford's interest in the Premises.

Ford contends that she is entitled to compensatory and punitive damages by virtue of Cameo's willful violation of the automatic stay. Section 362(k) provides:

> (1) Except as provided in paragraph 2, an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k). Paragraph 2 concerns certain personal property of the debtor and is inapplicable here. In this Circuit,

> "where a person takes a deliberate act . . . in violation of a stay, which the violator knows to be in existence, an award of damages under [§362(k)] is justified. . . . Such an act need not be performed with specific intent to violate the stay. Rather, so long as the violator possessed general intent in taking actions which have the effect of violating the automatic stay, the intent requirement of [§ 362(k)] is satisfied."

*In re Sucre*, 226 B.R. 340, 346 (Bankr. S.D.N.Y. 1998). Maliciousness or bad faith on

the part of the offending party warrants the imposition of punitive damages. *In re Reinhardt*, 209 B.R. 183, 188 (Bankr. S.D.N.Y. 1997).

Here, Ford's attorney sent notice of the bankruptcy proceeding and Ford's interest in the Premises to Cameo's counsel on April 17, 2007, well before Cameo filed its notice of lien. However, Cameo was not included on Ford's schedule of creditors and, accordingly, would not have received the official court generated notice of her petition. *See Dominguez*, 312 B.R. at 508. Further, although Ford indicated her efforts to settle the title dispute in her notice to Cameo, ZBT remained the record owner at the time Cameo filed its notice of lien. Accordingly, it is uncertain from the record whether Cameo's violation of the automatic stay was willful.

The Bankruptcy Court made no ruling with respect to Ford's cross-motion for damages incurred by Cameo's violation of the automatic stay. As the Court of first instance in this context, the Bankruptcy Court should have such an opportunity. Therefore, the Court will remand this matter to the Bankruptcy Court for the purposes of determining whether Cameo's violation of the automatic stay was willful within the meaning of § 362(k) and whether Ford is entitled to damages for such violation.

**D.    As to Whether the Bankruptcy Court Properly Granted Relief from the Automatic Stay**

The invalidity of the lien against Ford's interest does not end the inquiry. *In re Mizuno*, 288 B.R. 45, 49–50 (Bankr. E.D.N.Y. 2002) ("While that possessory interest is sufficient to prevent [a creditor] from taking further action in the absence of the

automatic stay being lifted, it is not a sufficient basis to deny [a stay relief] motion.");

*In re Eclair Bakery Ltd.*, 255 B.R. 121, 134 (Bankr. S.D.N.Y. 2000) (finding that "while . . . remaining rights on the part of the debtor tenant trigger the applicability of the automatic stay in the first instance, they are not determinative of the fundamentally different question as to whether the stay, once triggered, should be modified or terminated for cause.")

Even absent a lien, the bankruptcy court may grant relief from the automatic stay to any "party in interest," who makes the requisite showing for relief. Creditors are such interested parties and may seek relief. *In re Comcoach Corp.*, 698 F.2d 571, 573–74 (2d Cir. 1983). A "creditor" is defined as "an entity that has a claim against either the debtor or the estate, arising at certain specified times." *Id.* at 574. Because Cameo has a claim against the Premises, which the appellant herself alleges to be an important part of the estate, it is a party in interest with standing to petition for stay relief.

> Section 362(d) of the Bankruptcy Code provides that:
>
> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay:
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if:
>     (A) the debtor does not have an equity in such property; and

> (B) such property is not necessary to an effective reorganization

11 U.S.C. § 362(d). In *In re Fitzgerald*, 237 B.R. 252, 259 (Bankr. D. Conn. 1999), the burden on a motion to lift or modify the automatic stay was well set forth as follows:

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property. . . . If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection. *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) (citations and internal quotation marks omitted). *See also In re Mazzeo*, 167 F.3d 139, 142 (2d Cir.1999). If, however, the movant is able to make an initial showing of "cause," the burden then shifts to the debtor to demonstrate entitlement to the protection of the stay; the risk of nonpersuasion is on the debtor. *Id.*; *see also In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997) (stating that debtor bears burden of going forward with evidence and the "burden of ultimate persuasion.").

*In re Fitzgerald*, 237 B.R. at 259.

The Bankruptcy Court determined that Cameo established that its interest in the Premises was not adequately protected because "nobody is proposing to pay them." (Tr. Hearing, March 17, 2008, at 16:11–13). Judge Craig explained: "it's clear to me that they have a right to commence an action against ZBT to recover that, and if they need to name Ms. Ford in order to complete their foreclosure I think that they should be permitted to do that." (Tr. Hearing, March 17, 2008, at 16:13–16).

There is significant support for Judge Craig's determination. Section 361 provides examples of what constitutes adequate protection and included periodic cash payments. *In re Mitrany*, No. 08CV40034, 2008 WL 2128162, at *3 (Bankr. E.D.N.Y. May 16, 2008). Courts have found lack of adequate protection where a party is entitled to periodic post-petition payments from the debtor that remain unpaid. *See Mitrany*, 2008 WL 2128162, at *3; *In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) ("[A] debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)."); *In re Eatman*, 182 B.R. 386, 391–92 (Bankr. S.D.N.Y. 1995) (finding condominium board of managers entitled to relief from stay where (1) the debtor owner had not paid common charges in years, which implied that he would not pay common charges in the future; and (2) the apartment held as collateral was likely to decrease in value over time).

Here, because of Ford's claimed interest in the Premises, Cameo was bound to name her in any foreclosure proceeding. *In re Comcoach*, 698 F.2d at 574 (stating that under New York law, a party seeking to foreclose on property must name lessees as necessary parties or risk leaving the lessee's interest unaffected by the foreclosure). Further, Ford has asserted an ownership interest in the Premises, continues to reside there, and has failed to pay the common charges despite her knowledge that the payments had fallen into arrears. Although the parties have stated that ZBT is the

entity responsible for payment of the common charges, Cameo will have a claim against the bankruptcy estate, if the Premises are found properly part of that estate. Accordingly, the Court finds that Cameo has established an interest in the Premises and a lack of adequate protection sufficient to lift the stay and name the appellant in any foreclosure action.

Finally, the appellant argues that the Bankruptcy Court should have circumscribed the relief granted in its lift stay order to the amount Cameo sought to collect. Ford contends that the open-ended order issued by the Bankruptcy Court may deprive the estate and its creditors of interests in the Premises without appropriate review by the Bankruptcy Court. Ford alleges that her fears are not without foundation because she tendered payment to Cameo in the amount of $7,240.00, which it rejected with an expression of intent to seek additional amounts. (Exh. A to Appellant's Reply Brief).

The appellant correctly points out that relief from the automatic stay should be read narrowly in favor of the debtor. *See In re Prudential Lines, Inc.*, 69 B.R. 439, 444 (Bankr. S.D.N.Y. 1987) (noting that exceptions to the automatic stay should be applied narrowly). On the record before Judge Craig, Cameo's attorney acknowledged the necessity of bringing its claims against Ford's interest separately before the Bankruptcy Court, if Ford's fraud action is successful:

> The Court: Well, I certainly see no reason why the condo can't sue ZBT, and as long as they aren't

|  | evicted - - you're not proposing to evict the Fords. Correct. |
|---|---|
| Mr. Rocco: | At the present time? |
| The Court: | You would have to seek further permission. |
| Mr. Rocco: | We would - - first, we'd have to have a solution of the property through a foreclosure action against ZBT. |
| The Court: | And then - - |
| Mr. Rocco: | At that point then we would then have whatever rights are available against the Fords. |

. . . .

| The Court: | - - and you're saying that you would come back to this court for further permission before you would do anything to disrupt their possessory interest in the property? |
|---|---|
| Mr. Rocco: | Yes. |

. . . .

| The Court (addressing Ford's attorney): | Well, I think that's why they have to name your client as a defendant, because she claims an interest in the property. |
|---|---|
| Mr. Lubell: | Right, but when they sell it they should be selling it subject to our interest in the property, not, you know - - |
| The Court: | Well, I think they'll have to - - wouldn't they - - you'd have to come back here for permission to do that, right? |
| Mr. Rocco: | Yes and no. If nothing happens further, other than a mere allegation that the Fords were defrauded, in two years nothing has been done other than trying to resolve this with a stip that obviously by it's face is dead, a Chapter 11 case that has no action on it since July of 2007. In other words, we can do that, but how many more months or years before we are able to even enforce their alleged interest in this piece of property? And there should be some timeframe where either they are awarded their interest or they're deemed |

15

> not to have a valid interest and therefore not
> be entitled to.

(Tr. of Hearing, March 17, 2008, at 10:9–11:25). The Court finds that Ford's interests, possessory or otherwise, may be jeopardized by the lift stay order as it is presently drawn. Therefore, this matter is remanded to the Bankruptcy Court to limit the lift stay order to the amount Cameo seeks to recover for non-payment of the common charges.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that this matter is remanded to the Bankruptcy Court for a determination of whether Cameo's violation of the automatic stay was willful within the meaning of 11 U.S.C. § 362(k); and it is further

**ORDERED**, that this matter is remanded to the Bankruptcy Court to circumscribe and limit the lift stay order to the amount Cameo seeks to collect for non-payment of the common charges on the Premises; and it is further

**ORDERED**, that the Order of the Bankruptcy Court is affirmed in all other respects.

**SO ORDERED.**
Dated: Central Islip, New York
February 18, 2009

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge